IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| PETE MONSTELLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:11-cv-525-JRS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Pete Monstello ("Plaintiff") has worked as an engineering manager for air conditioning

systems and owned and operated a tour bus company in the Virgin Islands. He alleges that he

suffers from kidney and liver failure as well as difficulty from walking. On August 12, 2008,

Plaintiff applied for Social Security Disability ("DIB") with an onset date of May 1, 2006, and a

date last insured of March 31, 2008, under the Social Security Act (the "Act"). Plaintiff's claim

was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for DIB

benefits. The Appeals Council subsequently denied Plaintiff's request for review on June 13,

2011. Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that the ALJ

erroneously assessed Plaintiff's residual functional capacity ("RFC") and erroneously

determined that Plaintiff was capable of his past relevant work.

In his decision, the ALJ determined that Plaintiff had the RFC to perform the full range

of medium work. (R. at 16.) In doing so, the ALJ rejected Plaintiff's statements concerning the

intensity and limiting effects of his pain as not credible, as Plaintiff indicated that his illness first

prevented him from working on July 15, 2008. (R. at 17.) The ALJ also determined that Plaintiff could perform his past relevant work through his date last insured. (R. at 18.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 6) be DENIED; that Defendant's motion for summary judgment (ECF No. 8) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. MEDICAL AND WORK HISTORY

Because Plaintiff complains that the ALJ erred when he determined Plaintiff's RFC, Plaintiff's medical history is summarized below. Additionally, Plaintiff argues that he is unable to perform his past relevant work. Therefore, Plaintiff's statements pertaining to his activities of daily living (ADLs) and work history are also addressed.

### A.    Plaintiff's Medical History

Before Plaintiff's alleged onset date, Plaintiff had bilateral arthroscopic knee surgery for a torn meniscus in 2001 and 2003, and had cortisone and SynVis injections in 2005 that, Plaintiff claimed, did not aid his pain. (*See* R. at 459.)

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Plaintiff was hospitalized twice in May 2006 for acute alcoholic hepatitis associated with chronic alcohol abuse and liver disease with decompensation and jaundice. (R. at 209-10 & 186.) During his stay at the hospital, Plaintiff admitted to drinking heavily for over five to ten years. (R. at 223.) Plaintiff was placed on medication "to revert the onset of alcohol withdrawal syndrome" and was counseled to abstain from alcohol after he was discharged. (R. at 223.) The hospital staff noted that Plaintiff had "a history of bilateral knee effusions" and had "been using excessive amounts of Darvocet tablets to help." (R. at 209.) When he was admitted a second time that May, medical records reflected Plaintiff's 3+ pedal edema. (R. at 259.)

After Plaintiff was discharged from the hospital the second time, he followed-up with Lawrence Goldman, M.D., on June 5, 2006. (R. at 258.) Dr. Goldman noted that Plaintiff had alcoholic cirrhosis, was jaundiced but alert and ambulating, had a broad gait "compatible with cerebellar degeneration" and had a 2+ pedal edema. (R. at 258.) A month later, Dr. Goldman noted that Plaintiff had alcoholic hepatitis, but was doing much better. (R. at 257.) He still had some broad based gait. (R. at 257.) Dr. Goldman also filled out a parking permit application for disability and wrote that Plaintiff had temporary and "limited mobility due to serious medical condition," which he asserted was cerebellar degeneration. (R. at 238.)

A year later, on May 9, 2007, Plaintiff returned to Dr. Goldman. (R. at 255.) Plaintiff admitted that he had resumed drinking alcohol daily over the last six months and that he drank rum and a bottle of wine each day. (R. at 255.) Dr. Goldman noted that Plaintiff's liver was enlarged and referred Plaintiff to a psychologist for alcoholism. (R. at 255.)

On August 2008 a few months after Plaintiff's date last insured, Plaintiff was admitted to the hospital for anemia. (R. at 268.) Plaintiff was documented as drinking at least one bottle of wine per day. (R. at 268.) He had 3+ or 4+ edema in the arms and legs. (R. at 268.) Plaintiff's

3

wife explained that Plaintiff had been drinking alcohol and eating only candy, that she had been

dealing with Plaintiff's alcoholism for "quite some time over the last several years," and that

Plaintiff and his wife left St. Thomas because alcohol was "flowing 'from the faucet.'" (R. at

268-69.)  Plaintiff was diagnosed with decompensated liver cirrhosis, anemia, anasarca with

ascites, various vitamin deficiencies, hyponatremia, hypomagnesemia, coagulopathy secondary

to liver cirrhosis, alcoholism and atrial flutter.  (R. at 269.)  At discharge, Plaintiff's wife was

encouraged to convince Plaintiff to go to counseling or Alcoholics Anonymous.  (R. at 269.)

In July 2009, Plaintiff complained of knee pain and swelling and had x-rays performed.

(R. at 582.)  Plaintiff's right knee had severe medial compartment joint space narrowing with

suprapatellar effusion.  (R. at 582-83.)  The left knee demonstrated severe mucoid joint pace

narrowing, varus angulation and tricompartmental osteophyte formation most severe in the

medial and patella femoral compartments.  (R. at 583.)  Plaintiff was diagnosed with

osteoarthritis of the bilateral knees.  (R. at 583.)

In August 2009, Plaintiff had a surgery consult and was diagnosed with bilateral knee

pain secondary to severe degenerative joint disease with a varus alignment.  (R. at 616-17.)

Plaintiff rated his pain as an eight out of ten, but had a range of motion in his knees of 0 to 100 or

0 to 90 with no swelling, erythema or effusion in his right knee.  (R. at 616.)

**B.     Plaintiff's Statements**

In progress notes dated June 19, 2009, Plaintiff's history was summarized as drinking a

twelve-pack of beer a week until January 2009 and having stopped working in 2008.  (R. at 460.)

However, Plaintiff indicated in another form that he became unable to work on May 1, 2006.  (R.

at 144.)  He further indicated that he made $35,000 a year while he was self-employed.  (R. at

145.)  In another statement, Plaintiff wrote that he worked as a tour bus operator until 2008 and

4

made $60,000 a year. (R. at 176.) Plaintiff also indicated that he developed severe arthritis in his knees on August 15, 2008. (R. at 156.) However, in another statement Plaintiff indicated that on July 15, 2008, his arthritis and organ damage prohibited him from walking or standing. (R. at 175.)

Plaintiff reported that "he was a project manager for installing air conditioning in commercial buildings." (R. at 145.) He used machines, tools and equipment, needed technical knowledge or skills, wrote reports, walked four hours a day, stood two hours a day, sat two hours a day, climbed one hour a day, stooped one hour a day, knelt one hour a day, crouched one hour a day and crawled one hour a day. (R. at 145-46.) Plaintiff carried "air conditioning components from a truck to his work area daily" and lifted up to fifty pounds. (R. at 146.) He supervised eight people. (R. at 146.) In another form, Plaintiff wrote that he designed and installed air conditioning controls on Carrier rooftop equipment. (R. at 176.) He used machines, tools and equipment, needed technical knowledge or skills, wrote reports, walked four hours a day, stood two hours a day, sat four hours a day and never climbed. (R. at 176.) Plaintiff indicated that he used mainly hand tools, lifted only ten pounds at a time and supervised three people about twenty percent of the time. (R. at 176.)

At the hearing before the ALJ, Plaintiff testified that he had an associate's degree, worked towards his bachelors' degree and went to a technical high school where he learned HVAC. (R. at 27.) Plaintiff testified that he had worked for himself since May 1, 2006, as a tour bus operator through August 2008. (R. at 29.) Plaintiff stated that he had worked eight hours a day and took home $1,500 monthly from the business for his and his wife's work. (R. at 31.) Plaintiff's son testified that Plaintiff "would make phone calls and stuff" and that Plaintiff could not walk up and down the pier. (R. at 40.)

Plaintiff testified that he had pain in his knees and took pain medication between May 1, 2006 and March 31, 2008. (R. at 33.) Plaintiff also stated that he had been using a wheelchair around his house. (R. at 33.) The majority of Plaintiff's testimony consisted of his current limitations as a result of his knee problems. (*See* R. at 34-39.)

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB on August 12, 2008, claiming disability due to kidney and liver failure along with difficulty walking with an alleged onset date of May 1, 2006. (R. at 12, 105-07, 144.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 45-46.) On December 11, 2009, Plaintiff testified before an ALJ. (R. at 12.) On January 26, 2010, the ALJ issued a decision finding that Plaintiff was not under a disability. (R. at 18-19.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on June 13, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 1-3.)

## III. QUESTIONS PRESENTED

Did the Commissioner properly assess Plaintiff's residual functional capacity?

Did the Commissioner properly determine that Plaintiff was capable of performing his past relevant work?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and

7

whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Bowen*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 1, 2006 and that his date last insured was March 31, 2008. (R. at 14.) At step two, the ALJ determined that Plaintiff was severely impaired from chronic alcoholism with a history of acute alcoholic hepatitis. (R. at 15.) The ALJ determined that Plaintiff's history of knee surgery was not severe, because Plaintiff was able to return to work after his surgeries in early 2000. (R. at 15.)

At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 15.) The ALJ then determined that Plaintiff had the RFC to perform the full range of medium work. (R. at 16.) The ALJ noted that Plaintiff ran a sightseeing business in the Virgin Islands and handled money, talked with people, sold tickets and worked eight hours a day. (R. at 16.) Plaintiff was hospitalized in May 2006, but returned to work. (R. at 16.) The ALJ summarized Plaintiff's statements that his "illness first bothered him and prevented him from working on July 15, 2008." (R. at 16.)

The ALJ then summarized Plaintiff's knee symptoms, which included alleged neuropathy, an inability to walk more than 50 feet before resting and the use of a wheelchair and pain medication to assist with ambulation. (R. at 16.) The ALJ noted that Plaintiff claimed his functional capabilities were severely limited and that he could help with the dishes and vacuum,

but was forgetful, easily distracted, constantly napped, would not drive and spent two to three hours a day in bed sleeping. (R. at 16-17.)

The ALJ noted that Plaintiff was treated for acute alcoholic hepatitis as a result of his alcohol abuse. (R. at 17.) Plaintiff was admitted to the hospital and was weak and extremely jaundiced, but did not require emergency treatment. (R. at 17.) The ALJ noted that Plaintiff was given medicine to regulate his liver function and to withdraw from alcohol, and was discharged to outpatient care. (R. at 17.) He also noted that Plaintiff resumed drinking rum and a bottle of wine a day in May 2007. (R. at 17.)

Because Plaintiff's medical records did not support Plaintiff's alleged limitations before March 31, 2008, the ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not fully credible. (*See* R. at 17.) In doing so, the ALJ noted that the only functional limitations listed in Plaintiff's treatment notes for acute alcoholic hepatitis were his "broad based gait" and that there were concurrent effects of his alcoholism and relapse. (R. at 17.) Although some of his work responsibilities were restricted, Plaintiff also testified that he continued to work at his sightseeing business and claimed his illness prevented him from working on July 15, 2008. (R. at 17.)

Next, the ALJ summarized the opinions of non-treating state agency physicians, who concluded that there was insufficient evidence to support a medically determinable impairment, and that although his condition improved, Plaintiff did not continue his treatment as prescribed. (R. at 17-18.) The ALJ also summarized medical records dated past Plaintiff's last insured date — March 31, 2008 — and indicated that while Plaintiff's doctors noted liver damage, congestive heart failure and osteoarthritis, and recommended total knee replacement surgery, there was no evidence of the severity of those impairments before March 31, 2008. (R. at 18.)

11

The ALJ then determined that Plaintiff had the RFC to lift no more than 50 pounds occasionally, lift no more than 25 pounds frequently, stand for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. (R. at 18.) At step four, the ALJ assessed that Plaintiff was able to perform his past relevant work as an air conditioner engineering manager or a tour operator. (R. at 18.) Continuing, the ALJ noted that Plaintiff's testimony and earnings record reflected that he performed these jobs in the past fifteen years and performed substantial gainful activity. (R. at 18.) The ALJ therefore found that Plaintiff had not been under a disability under the Act from May 1, 2006 through March 31, 2008. (R. at 18.)

Plaintiff argues that the ALJ erroneously assessed his RFC, as the ALJ failed to individually discuss each function as it related to Plaintiff. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-6.) Plaintiff also asserts that the ALJ erroneously determined that Plaintiff was capable of performing his past relevant work, as the ALJ's decision was not supported by substantial evidence. (Pl.'s Mem. at 11-17.) Defendant disagrees, arguing that substantial evidence supported the ALJ's decision. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 8-12.)

## A.    The ALJ's properly assessed Plaintiff's RFC.

Plaintiff relies on SSR 96-8p and *Lane-Rauth v. Apfel*, 437 F. Supp. 2d 63 (D.D.C. 2006), in arguing that the ALJ improperly assessed his RFC. (Pl.'s Mem. at 6-10.) First, Plaintiff complains that the ALJ failed to set forth a narrative discussion of Plaintiff's RFC, as required in SSR 96-8p and discussed in *Lane-Rauth*, 437 F. Supp. 2d at 67. (Pl.'s Mem. at 6.) In his decision, the ALJ summarized Plaintiff's medical history and statements. (R. at 16-18.) The ALJ noted Plaintiff's allegations of his limitations and Plaintiff's claim that his kidney and liver failure and knee problems first bothered him and prevented him from working on July 15, 2008.

12

(R. at 16.) While Plaintiff also cited August 2008 as his last date of work (*see* R. at 156 & 29), the ALJ summarized Plaintiff's own statements throughout the decision and continued to determine Plaintiff's RFC (*see* R. at 16-17). Continuing, the ALJ summarized Plaintiff's medical history and statements concerning his past work requirements. (R. at 16-18.)

Unlike in *Lane-Rauth*, the ALJ here created a narrative by including the objective evidence and explaining why the "objective findings from the claimant's treating examiners [did] not support [Plaintiff's] alleged limitations prior to March 31, 2008." (R. at 16-18.) More specifically, the ALJ noted the concurrent effect of Plaintiff's alcoholism, that Plaintiff's only limitations pertaining to his knees included a "'broad based gait'" and Plaintiff's own statements that he continued to operate his tour bus business until 2008 and that his illness first prevented him from working in July 2008. (R. at 17.) Based on the record, the ALJ properly determined Plaintiff's RFC of medium work.

Next, Plaintiff argues that the ALJ failed to properly evaluate the evidence of Plaintiff's bilateral knee impairments. (Pl.'s Mem. at 7-10.) The majority of Plaintiff's medical records during the relevant period between Plaintiff's alleged onset date (May 1, 2006) and Plaintiff's date last insured (March 31, 2008) encompassed Plaintiff's two hospitalizations in May 2006 for his alcoholism. (*See* R. at 209-69.) While Dr. Goldman endorsed Plaintiff's request for a handicapped parking permit in 2006, the permit was based on Plaintiff's limited mobility from cerebellar degeneration, which was secondary to his alcoholism. (*See* R. at 238, 258.) In fact, Plaintiff's medical records did not simultaneously document Plaintiff's knee complaints until November 15, 2008. (*See* R. at 131.) Regardless, Plaintiff's statements indicated no less than three times that Plaintiff's limitations first bothered and prevented him from working in the middle of 2008. (*See* R. at 460, 156, 175.) Because there was no objective, contemporaneous

13

evidence regarding Plaintiff's knee problems during the relevant period, the ALJ properly

determined that Plaintiff had the RFC to perform the full range of medium work.

**B.    Substantial evidence supported the ALJ's determination that Plaintiff was capable of performing his past relevant work.**

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past

relevant work to determine if the claimant is able to perform the tasks of his previous

employment. 20 C.F.R. § 404.1520(a)(4)(iv). The burden is still on Plaintiff at step four to

prove that he is unable to perform his past relevant work. Plaintiff must "show an inability to

return to [his] previous work (*i.e.,* occupation), and not simply to [his] specific prior job."

*DeLoatche v. Heckler,* 715 F.2d 148, 151 (4th Cir. 1983) (citing *Jock v. Harris,* 651 F.2d 133,

135 (2d Cir. 1981)). Further, the Commissioner may rely on the general job categories of the

*Dictionary of Occupational Titles* ("DOT") as presumptively descriptive of a claimant's prior

work. *Id.*

Plaintiff argues that the ALJ improperly classified his past relevant work. (Pl.'s Mem. at

12.) First, he asserts that his position as a project manager for the installation of air conditioning

units required him to carry up to fifty pounds which, he claims, he could not perform after his

onset date. (Pl.'s Mem. at 12.) Second, he asserts that his position as an owner/operator of a

tour bus company did not constitute SGA. (Pl.'s Mem. at 12-17.)

Although the ALJ classified Plaintiff's past work as a project manager as a "mechanical-

engineering technician," the ALJ noted that such work was light. (R. at 18.) This classification

was a fair representation of Plaintiff's past relevant work based on a comparison of Plaintiff's

statements of his work and the summary description in the DOT. More specifically, the DOT

description includes technical knowledge and assembly that is consistent with Plaintiff's own

statements. *Compare* DOT 007.161-026 "MECHANICAL-ENGINEERING TECHNICIAN

(profess. & kin.) alternate titles: engineering technician; experimental technician; laboratory-development technician; mechanical technician," *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT01A.HTM (last viewed July 18, 2012) *with* R. at 145, 176. Although Plaintiff focused on one of his statements that he had carried up to fifty pounds when he was in his previous position, he failed to note that he also included statements in the record that he lifted only ten pounds while at this position. (*Compare* R. at 145 *with* R. at 176.) Plaintiff's inconsistent statements pertaining to his past relevant work supported the ALJ's determination that he was capable of performing his past relevant work as a mechanical-engineer technician, which contained an RFC lower than that assigned by the ALJ to Plaintiff.

Next, Plaintiff contends that his past work as an owner/operator of a tour bus company could not constitute past relevant work, as it did not constitute SGA, and that the ALJ failed to properly evaluate this past relevant work under the regulations. (Pl.'s Mem. at 12-17.) This argument fails for two reasons. First, in no less than three places in the record and as noted by the ALJ, Plaintiff indicated that he became unable to work during the middle of 2008 — *after* his date last insured. (*See* R. at 16, 460, 144, 175.) Second, Plaintiff included statements in the record that he made anywhere from $35,000 to $60,000 a year, while he was working for himself as a tour bus operator through 2008. (*See* R. at 145, 176.) Plaintiff and his son both testified that Plaintiff worked eight hours a day, managed the tour bus company through August 2008 and took home $1,500 a month. (R. at 26, 31, 40.)

Under the regulations, the ALJ "will not consider [plaintiff's] income alone because the amount of income [he] actually receive[d] may depend on a number of different factors, such as capital investment and profit-sharing agreements." 20 C.F.R. § 404.1575(a)(2). However, under

the first test of the regulations, a plaintiff has "engaged in substantial gainful activity if [he] render[ed] services that are significant to the operation of the business and receive[d] a substantial income from the business." 20 C.F.R. § 404.1575(a)(2)(i). Plaintiff's statements clearly indicated that his work as an owner/operator of a tour bus company constituted SGA, because he testified that he managed his own business eight hours a day and took home somewhere between $18,000, $35,000 or $60,000 a year. (R. at 26, 31, 40, 145, 176.)

Again, Plaintiff's inconsistent statements pertaining to his past relevant work supported the ALJ's determination that he was capable of performing his past relevant work as a travel agent, which contained an RFC lower than that assigned by the ALJ to Plaintiff. Because substantial evidence supported the ALJ's decision, the ALJ did not err when he determined Plaintiff was capable of performing his past relevant work.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No. 6) be DENIED; that Defendant's motion for summary judgment (ECF No. 8) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted

by the District Judge except upon grounds of plain error.

_____/s/_____

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated:  July 18, 2012

17